**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Robert Hanson, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

Sanford Health Corp.,

Defendant.

Case No. 25-cv-3129-PJS-LIB

**Sanford Health's Memorandum in Support of Motion to Dismiss**

---

## TABLE OF CONTENTS


Introduction ........ 1

Party Allegations ........ 3

Website Tracking Allegations ........ 3

Plaintiff's Personal Allegations ........ 4

Legal Standard ........ 5

Argument ........ 5

I. Plaintiff's invasion of privacy claim is based on an alleged disclosure, not an intrusion ........ 5

II. Plaintiff has failed to state a Minnesota Health Records Act claim because Plaintiff's Website interaction does not qualify as a "health record" ........ 9

a. Background of the MHRA ........ 10

b. Plaintiff's Allegations ........ 14

III. Plaintiff failed to state an ECPA claim where Sanford was a party to Plaintiff's communications and the crime-tort exception does not apply ........ 18

IV. Plaintiff failed to state a MUDTPA claim with particularity as required under Rule 9(b) ........ 23

a. Plaintiff failed to meet the particularity standard required under Rule 9 ........ 23

b. Plaintiff lacks standing because he failed to allege future harm ........ 24

c. Plaintiff failed to allege a causal nexus ........ 26

d. Plaintiff failed to allege deceptive statements ........ 27

V. Plaintiff has failed to state a claim for relief under MCFA because he failed to establish a causal nexus ........ 28

VI. The Court should strike Plaintiff's fail-safe class definition ........ 30

Conclusion ........................................................................................................................ 32

## TABLE OF AUTHORITIES

### Cases

*Allen v. Novant Health, Inc.*, No. 22-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) .......... 8

*Allen v. Quicken Loans, Inc.*, 2018 WL 5874088 (D.N.J. Nov. 9, 2018) .......... 22

*Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780 (N.D. Tex. 2024) .......... 8

*Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .......... 5

*Banbury v. Omnitrition Int'l, Inc.*, 533 N.W.2d 876 (Minn. App. 1995) .......... 28

*Banga v. Equifax Info. Servs. LLC*, No. 14-CV-03038, 2015 WL 3799546 (N.D. Cal. June 18, 2015) .......... 7

*Barclay v. Icon Health & Fitness, Inc.*, No. 19-cv-2970, 2022 WL 486999 (D. Minn. Feb. 17, 2022) .......... 25, 26

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) .......... 5

*BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908 (8th Cir. 2007) .......... 24, 30

*Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550 (Minn. 2003) .......... 8

*Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-1497, 2009 WL 1664468 (D. Minn. June 11, 2009) .......... 18

*Caro v. Weintraub*, 618 F.3d 94 (2d Cir. 2010) .......... 20, 22

*City of L.A. v. Lyons*, 461 U.S. 95 (1983) .......... 25

*C.L.D. v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 1080 (D. Minn. 1999) .......... 7, 8

*Cohen v. Casper Sleep, Inc.*, 2018 WL 33928277 (S.D.N.Y. July 12, 2018) .......... 22

*Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639 (8th Cir. 1995) .......... 23

*Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561 (N.D. Ill. 2020) .......... 8

*Donelson v. Ameriprise Fin. Services, Inc.*, 999 F.3d 1080 (8th Cir. 2021) .......... 30

*E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659 (8th Cir. 2012) ............................23

*Expose v. Thad Wilderson & Assocs., P.A.*, 889 N.W.2d 279 (Minn. 2016) ......................12

*Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616 (8th Cir. 2021) .................................31

*Furlow v. Madonna Summit of Byron*, No. 19-987, 2020 WL 413356 (Minn. App. Jan. 27, 2020) ......................................................................... 11, 14, 17

*Grady v. Progressive Direct Ins. Co.*, 643 F. Supp. 3d 929 (D. Minn. 2022) ........................28

*Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 850 N.W.2d 682 (Minn. 2014) ..................................................................................28

*Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2 (Minn. 2001) ...........................26

*Hartley v. Univ. of Chi. Med. Ctr.*, No. 22-5891, 2023 WL 7386060 (N.D. Ill. Nov. 8, 2023) ..................................................................................8

*Holtzbauer v. Allina Health Sys.*, 23 N.W.3d 608 (Minn. App. 2025), *review granted* (Aug. 12, 2025) ........................................................................ 12, 14, 17

*Howard v. Des Moines Register & Tribune Co.*, 283 N.W.2d 289 (Iowa 1979) ...................11

*In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497 (S.D.N.Y. 2001) ............. 20, 21

*In re Google Inc. Gmail Litig.*, No. 13-md-02430-LHK, 2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ........................................................................... 21, 22

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125 (3d Cir. 2015) .......19

*In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023) ....... 13, 14, 17, 19, 20

*In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778 (N.D. Cal. 2022) ..........3, 4, 13, 21

*Jaskulske v. State Farm Mut Auto. Ins. Co.*, No. 14-cv-869, 2014 WL 5530758 (D. Minn. Nov. 3, 2014) ........................................................................... 24, 25

*Kamar v. RadioShack Corp.*, 375 F. App'x 734 (9th Cir. 2010) .........................................31

*Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 1471299 (N.D. Cal. Apr. 3, 2024) .................21

*Kurowski v. Rush Sys. for Health*, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) ..................19

*Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931 (N.D. Ill. 2023) *aff'd on reconsideration,* 2023 WL 4707184 (N.D. Ill. Jul. 24, 2023) ........................................... 8, 22

*Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231 (Minn. 1998) ........................................ 1, 6

*Lehman v. Zumbrota-Mazeppa Pub. Schs.*, No. 04-1226, 2005 WL 894756 (Minn. App. Apr. 19, 2005) ........................................................................... 6, 7, 11

*Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080 (D. Minn. 2017) .......................................... 26

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) .................................................................. 25

*Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916 (D. Minn. 2024) ................. passim

*Morton v. Becker*, 793 F.2d 185 (8th Cir. 1986) ................................................................. 5

*Nationwide Ins. Co. v. Cent. Mo. Elec. Coop., Inc.*, 278 F.3d 742 (8th Cir. 2001) ................ 30

*Nienaber v. Overlake Hosp. Med. Ctr.,* 733 F. Supp. 3d 1072 (W.D. Wash. 2024) .............. 7

*Okash v. Essentia Health*, No. CV 23-482 (JRT/LIB), 2024 WL 1285779 (D. Minn. Mar. 26, 2024) .................................................................... 7, 8, 9, 19, 21

*Okash v. Essentia Health*, No. CV 23-482 (JRT/LIB), 2025 WL 642913 (D. Minn. Feb. 27, 2025) ......................................................... 13, 14, 17,19, 20, 29

*Olen v. N. Tier Retail, LLC*, No. 11-2665, 2012 WL 1580994 (D. Minn. May 4, 2012) ..................................................................................... 25

*Orduno v. Pietrzak*, 932 F.3d 710 (8th Cir. 2019) ......................................................... 30, 31

*Park v. U.S. Forest Serv.*, 205 F.3d 1034 (8th Cir. 2000) .................................................... 25

*Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112 (S.D. Cal. 2023) ................................ 18, 21

*Planned Parenthood Fed. Of Am., Inc. v. Newman*, 51 F.4th 1125 (9th Cir. 2022) ............. 22

*Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077 (8th Cir. 1999) ....................................... 5

*Rhoades v. Lourey*, No. A18-1120, 2019 WL 1006804 (Minn. App. Mar. 4, 2019), *review denied* (Minn. May 28, 2019) ........................................................... 10, 14, 17

*Rodriguez v. Google, LLC*, 2021 WL 2026726 (N.D. Cal. May 21, 2021) ......................... 22

*S.F. v. Clay County*, No. A14-0494, 2014 WL 6863230 (Minn. App. Dec. 8, 2014) .....12

*Schriener v. Quicken Loans, Inc.*, 774 F.3d 442 (8th Cir. 2014)......5

*Song v. Champion Petfoods USA, Inc.*, No. 18-CV-3205, 2020 WL 7624861 (D. Minn. Dec. 22, 2020) ......27

*Thomas v. Pearl*, 998 F.2d 447 (7th Cir. 1993)......9

*Thompson v. Vintage Stock, Inc.*, 4:23-CV-00042-SRC, 2024 WL 492052, (E.D. Mo. Feb. 8, 2024), *reconsidered on other grounds*, 4:23-CV-00042-SRC, 2024 WL 1636705 (E.D. Mo. Apr. 16, 2024)...... 31, 32

*TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021) ......25

*United States v. Jiau*, 743 F.3d 147 (2d Cir. 2013) ......20

*United States v. Phillips*, 540 F.2d 319 (8th Cir. 1976)......23

*Zean v. Fairview Health Servs., Inc.*, 858 F.3d 520 (8th Cir. 2017) ......28

**Statutes**

18 U.S.C. § 2510......18

18 U.S.C. § 2510(4) ......18

18 U.S.C. § 2511(1) ...... 1, 4, 19

18 U.S.C. § 2511(1)(a)......18

18 U.S.C. § 2511(1)(c)......18

18 U.S.C. § 2511(1)(d) ......18

18 U.S.C. § 2511(2)(d) ......1, 18, 19, 20

Fed. R. Civ. P. 9(b) ......23

Fed. R. Civ. P. 12(f) ...... 30, 32

Fed. R. Civ. P. 23(b)(3)(D) ......31

Minn. R. Civ. P. 12(b)(6)......5

Minn. Stat. § 144.291, subd. 2(c) ........ 2, 10, 16

Minn. Stat. § 144.292, subd 5(1) ........ 10

Minn. Stat. § 144.293, subd. 2 ........ 2, 9

Minn. Stat. § 144.293, subd. 3 ........ 10

Minn. Stat. § 325D.43-48 ........ 5

Minn. Stat. § 325D.44, subd. 1(5) ........ 23

Minn. Stat. § 325D.45, subd. 1 ........ 23, 24

Minn. Stat. § 325F.68, Subd. 2 ........ 28

**Other**

Electronic Communications Privacy Act ........ passim

Minnesota Consumer Fraud Act ........ 2, 5, 28, 29

Minnesota Health Records Act ........ passim

Minnesota Uniform Deceptive Trade Practices Act ........ passim

## INTRODUCTION

This is a proposed class action arising from a single visit to Sanford Health's public website. Plaintiff alleges that Sanford utilized a tracking tool—a Pixel—that captured his interaction with the public-facing website and shared that information with third parties such as Meta and Google. Without detailing what information he put into the public website, Plaintiff claims that the Pixel obtained personally identifiable and protected health information and transmitted that information to third parties. Plaintiff alleges six causes of action, five of which fail to state a claim for relief under the applicable authority.

First, Plaintiff fails to state an invasion of privacy claim. For a viable invasion of privacy claim, Plaintiff must allege that Sanford intruded into his private affairs. *See Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn. 1998). Plaintiff fails to allege an intrusion by Sanford. Instead, Plaintiff alleges that third parties, via the Pixel, obtained information about his website use. Plaintiff admits that it was those third-parties who sent him advertisements. Thus, an entity other than Sanford committed the alleged invasion about which Plaintiff complains.

Second, Plaintiff has not stated a claim under the Electronic Communications Privacy Act ("ECPA"), which required him to allege that Sanford engaged in an "interception." 18 U.S.C. § 2511(1). Plaintiff admits that Sanford was a party to the "communications" that he claims were intercepted. (Doc. 1, ¶ 175). The ECPA's party exception explicitly excludes liability under these circumstances. *See* 18 U.S.C. § 2511(2)(d). The ECPA party exception does not apply if the communication is intercepted for the purpose of committing a criminal or tortious act. *Id.* But Plaintiff does not allege that Sanford acted with the purpose of committing a criminal or tortious act when it utilized the Pixel. Plaintiff also does not allege a separate act

other than the simultaneous disclosure of the communication, which is required to invoke the crime-tort exception. Plaintiff did not allege the necessary elements of a violation of the ECPA.

Third, Plaintiff failed to allege that the information allegedly collected by the Pixel constitutes a "health record" under the Minnesota Health Records Act ("MHRA"). The MHRA prohibits Sanford from releasing a patient's health records. Minn. Stat. § 144.293, subd. 2. A health record includes "any information" that relates to the condition of a patient or the provision or payment of healthcare. Minn. Stat. § 144.291, subd. 2(c). Plaintiff alleges that his input of a physician's name on the public-facing website constitutes a health record under the MHRA. But the MHRA does not support such a conclusion. Plaintiff must allege that the information relates to a physical condition or the provision of health care to him. Plaintiff did not do so—he alleges that he input his "physician's information," but does not allege that he provided any other information that was tracked by the Pixel. The name of a doctor does not relate to the provision of health care or Plaintiff's current physical or mental health condition. Plaintiff has not stated a claim under the MHRA.

Finally, Plaintiff failed to plead viable claims under the Minnesota Uniform Deceptive Trade Practices Act ("MUDTPA") and Minnesota Consumer Fraud Act ("MCFA"). MUDTPA and MCFA claims must be pleaded with particularity. Plaintiff alleges many wide-reaching facts about the general use of a Pixel, but he fails to allege how Sandford's use of a Pixel was fraudulent toward him specifically. And Plaintiff fails to allege a causal nexus between Sanford's alleged fraudulent practices and his injury.

For these reasons, as more deeply set forth below, Plaintiff has failed to state a claim for relief on Counts I through V in his complaint and Sanford respectfully requests that the Court dismiss those claims.

## PARTY ALLEGATIONS

Plaintiff Robert Hanson is a resident of Minnesota and an alleged patient of Defendant Sanford Health Corporation. (Doc. 1, ¶¶ 13, 14).[1] Sanford is a South Dakota faith-based nonprofit health care system that serves patients across fifteen states. (Doc. 1, ¶ 2). Sanford maintains a public-facing website at www. sanfordhealth.org ("Website"). [2] (*Id.*, ¶ 3).

## WEBSITE TRACKING ALLEGATIONS

Plaintiff alleges that Sanford deployed third-party tracking technologies, including the Meta Pixel, Google Analytics, and session replay codes ("Tracking Tools") on the Website to intercept and disclose visitor interactions. (Doc. 1, ¶¶ 1–12, 15, 38–72, 80–89). These Tracking Tools allegedly captured the content of Website visitor communications, including searches for physicians, medical services, and health conditions (*Id.*) Plaintiff alleges that the Meta Pixel tracks website "user visits during a website session that reveal patient status and other Personal Information, which is not anonymized." (*Id.*, ¶ 4). Such information allegedly includes, "computer IP addresses; patient status; health conditions; health symptoms; treatments; health assessments; and unique identifiers used to link the web communications to Plaintiff and the

[1] "Sanford Health Corporation" is not the correct entity for Plaintiff's claims.

[2] Sanford also maintains a separate patient portal that can only be accessed by those with an account, but that portal is not at issue in the Complaint. *See* https://www.mysanfordchart.org/mychart/.

Class, [that] was compromised and disclosed to third parties without authorization or consent." (*Id.*, ¶ 6).

Through the Tracking Tools, Plaintiff asserts that Sanford disclosed personally identifiable information ("PII") and protected health information ("PHI"), including patient status, conditions, symptoms, treatments, and physician relationships to third parties such as Meta. (Doc. 1, ¶¶ 4-9, 66-71, 94-97). Plaintiff alleges that this information allows Meta to know a specific visitor was "seeking confidential health care from Sanford or exploring treatment for a specific Condition." (*Id.*, ¶ 7). Allegedly, Sanford is utilizing the Meta Pixel is to increase profitability and for the "purposes of future ad targeting and marketing." (*Id.*, ¶¶ 5, 38).

**PLAINTIFF'S PERSONAL ALLEGATIONS**

Plaintiff alleges that in "fall of 2024," he was due to have back surgery. (Doc. 1, ¶ 15). On an unspecified day, Plaintiff visited the Sanford Health Doctors page[3] where he input his "physician's information." (*Id.*) Plaintiff alleges that after he put his "physician's information" into the search bar, he received "targeted advertisements relating to back and spine issues" but did not allege when he received them or on what digital platform. (*Id.*) Plaintiff does not recall what advertisements he received or what organization the advertisements were from. (*Id.*)

Based on this single interaction with the Website, Plaintiff asserts six causes of action: (1) invasion of privacy; (2) violations of the Electronic Communications Privacy Act ("ECPA") 18 U.S.C. § 2511(1); (3) violations of the Minnesota Unfair and Deceptive Trade

---

[3] Sanford Health, *Find a Doctor*, https://www.sanfordhealth.org/doctors (last visited September 12, 2025 7:41 a.m.).

Practices Act ("MUDTPA") Minn. Stat. § 325D.43-48; (4) violations of the Minnesota Health Records Act, (5) violations of the Minnesota Consumer Fraud Act; and (6) unjust enrichment.

## LEGAL STANDARD

To determine whether a complaint is subject to dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim, a district court accepts the facts alleged in the complaint as true and construes all reasonable inferences in favor of the nonmoving party. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555, 127 S.Ct. 1955. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955).

The Court may consider the allegations in the complaint as well as "those materials that are necessarily embraced by the pleadings." *Schriener v. Quicken Loans, Inc.*, 774 F.3d 442, 444 (8th Cir. 2014). The Court may also consider matters of public record and exhibits attached to the pleadings, if those documents do not conflict with the complaint. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## ARGUMENT

### I. Plaintiff's invasion of privacy claim is based on an alleged disclosure, not an intrusion.

Plaintiff's invasion of privacy claim must be dismissed because the alleged invasion of privacy results from a disclosure, not an intrusion. And regardless, it was Meta's Pixel, not

Sanford, that intercepted the alleged information. *See Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 936 (D. Minn. 2024) (dismissing a claim of intrusion upon seclusion due to Meta's interception of the information). Plaintiff's invasion-of-privacy claim should be dismissed.

To state a claim for intrusion upon seclusion, Plaintiff must allege that Sanford intentionally engaged in a highly offensive intrusion into another person's private affairs. *See Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn. 1998). Intrusion requires an "affirmative act by the defendant in obtaining the information" which cannot exist when the information is provided by the plaintiff, even if a defendant later shares the information. *Lehman v. Zumbrota-Mazeppa Pub. Schs.*, No. 04-1226, 2005 WL 894756, at *4 (Minn. App. Apr. 19, 2005).

Plaintiff failed to allege an actionable intrusion by Sanford. The core of Plaintiff's claim is Sanford's alleged deployment of third-party code or Pixels that caused the transmission of visitor data. (Doc. 1, ¶¶ 3-6, 9, 38-96). The simplified allegation is that Plaintiff's injury stems from the *disclosure* of his alleged personal health information to third parties. As Plaintiff alleges in his invasion-of-privacy claim, "Plaintiff and the Class members never agreed that Defendant could *disclose* their Website Communications to its vendors and third parties." (Doc. 1, ¶ 163 (emphasis added); *see also id.* at ¶ 165 ("Defendant disclosed . . ."); ¶ 167 ("Defendant's unauthorized disclosure . . .")). The harm that Plaintiff alleges is not that Sanford allegedly recorded this "communication," but that the disclosure of third-party source code allegedly caused his web browsing to make it to Meta, Google, and other sources. The claimed "intrusion" on Plaintiff's privacy via interception of his Website visit was carried out by third

parties, i.e. Meta. Plaintiff cannot plausibly allege an intrusion by Sanford where Plaintiff concedes that it was Meta, not Sanford, that made the interception. Plaintiff's allegations simply do not fit an intrusion upon seclusion claim.

And Plaintiff's invasion of privacy claim cannot continue because he voluntarily provided information to Sanford. Where a plaintiff voluntarily provides information to a defendant, a defendant has not intruded into plaintiff's private affairs, even if that information is subsequently disclosed. *See Lehman*, 2005 WL 894756, at *4 (affirming lack of intrusion where plaintiff voluntarily provided his medical leave letter which was later disclosed to the press—noting that what plaintiff "object[ed] to is not the school district obtaining the letter but its publication of the letter"); *C.L.D. v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 1080, 1083 n.1 (D. Minn. 1999) ("[P]laintiff voluntarily disclosed her medical circumstances to [the defendant] and cannot claim that he obtained the information by intrusive means."). For example, in *Okash v. Essentia Health*, the court held that because the plaintiff voluntarily visited the defendant's website and provided his data to the website, the defendant "did not intrude upon his seclusion." *Okash v. Essentia Health*, No. CV 23-482 (JRT/LIB), 2024 WL 1285779, at *7 (D. Minn. Mar. 26, 2024) (*Okash I*); *see also Banga v. Equifax Info. Servs. LLC*, No. 14-CV-03038, 2015 WL 3799546, at *9 (N.D. Cal. June 18, 2015) (holding that no intrusion occurred where the defendant "improperly disclosed data about [the plaintiff] which it properly possessed"); *Nienaber v. Overlake Hosp. Med. Ctr.,* 733 F. Supp. 3d 1072, 1089 (W.D. Wash. 2024). That is because intrusion requires an "affirmative act by the defendant in obtaining the information" which cannot exist when the information is provided by the plaintiff, even if a defendant later shares the information. *Lehman*, 2005 WL 894756, at *4.

Plaintiff alleges that after he voluntarily visited the Website and "input his physician's information" into the Website, Sanford "disclosed" that information to Meta. Courts dismiss intrusion-upon-seclusion claims under nearly identical facts as those alleged here. In fact, courts across the country generally agree that when a plaintiff voluntarily browses a healthcare website, there is no intrusion when the Pixel transmits that information to Meta. *See Okash I*, 2024 WL 1285779, at *7; *Kurowski v. Rush Sys. for Health*, 659 F. Supp. 3d 931, 943 (N.D. Ill. 2023) *aff'd on reconsideration,* 2023 WL 4707184 (N.D. Ill. Jul. 24, 2023); *Allen v. Novant Health, Inc.*, No. 22-697, 2023 WL 5486240, at *2 (M.D.N.C. Aug. 24, 2023); *Hartley v. Univ. of Chi. Med. Ctr.*, No. 22-5891, 2023 WL 7386060, at *3 (N.D. Ill. Nov. 8, 2023); *Dinerstein v. Google, LLC*, 484 F. Supp. 3d 561, 594 (N.D. Ill. 2020); *cf. C.L.D. v. Wal-Mart Stores, Inc.*, 79 F. Supp. 2d 1080, 1083 n.1 (D. Minn. 1999) (holding intrusion upon seclusion inapplicable where "plaintiff voluntarily disclosed her medical circumstances to [defendant] and cannot claim that he obtained the information by intrusive means."); *see also Am. Hosp. Ass'n v. Becerra*, 738 F. Supp. 3d 780, 801-03 (N.D. Tex. 2024) (concluding that web browsing does not constitute IIHI under HIPAA). Because Plaintiff voluntarily engaged with Sanford's Website, Sanford could not have intruded into Plaintiff's private affairs. *See Okash I*, 2024 WL 1285779, at *7.

Plaintiff may argue that the invasion of privacy claim is premised on the public disclosure of private facts. A tortious publication of private facts occurs when someone "gives publicity to a matter concerning the private life of another if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." *Bodah v. Lakeville Motor Express, Inc.*, 663 N.W.2d 550, 553 (Minn. 2003) (cleaned up). To survive a motion to dismiss on a claim of publication of private facts, Plaintiff must

allege that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* at 557. Plaintiff does not allege that the data was made public or communicated to the public at large. Nor does Plaintiff allege that the data is "substantially certain to become public knowledge" as is required under Minnesota law. *Id.* Accordingly, such claim must be dismissed with prejudice as Plaintiff has failed to state a claim.

Even drawing all inferences in Plaintiff's favor, the only plausible conclusion is that the claimed harmful intrusion here, if any, was accomplished by third parties. According to Plaintiff's allegations, third-party cookies are the mechanism by which the intrusion is carried out. Any harm arises from the claimed disclosure of Plaintiff's private health information, not from Sanford deployment of someone else's source code. *See Thomas v. Pearl*, 998 F.2d 447, 452 (7th Cir. 1993) ("a plaintiff fails to state a claim for invaded seclusion if the harm flows from publication rather than intrusion"). Further, no intrusion occurred because Plaintiff voluntarily interacted with Sanford. *Okash I*, 2024 WL 1285779, at *7. Because Plaintiff did not allege sufficient facts to support a claim for intrusion upon seclusion upon which relief can be granted, Sanford respectfully requests that the Court dismiss Count I.

## II. Plaintiff has failed to state a Minnesota Health Records Act claim because Plaintiff's Website interaction does not qualify as a "health record."

Plaintiff alleges that Sanford violated the MHRA, which prohibits healthcare providers from "release[ing] a patient's health records to a person" without the patient's consent or "specific authorization in law." Minn. Stat. § 144.293, subd. 2. Plaintiff's claim fails because he did not plausibly allege that Sanford disclosed his "health records" to a third party.

**a. Background of the MHRA**

Plaintiff alleges that a visit to a public website during which a visitor inputs a "physician's information"[4] constitutes a health record under the MHRA. The MHRA does not support that claim. Under the MHRA, a "health record" includes:

> any information, whether oral or recorded in any form or medium, that relates to the past, present, or future physical or mental health or condition of a patient [,] the provision of healthcare of a patient [or] or the past, present, or future payment for the provision of healthcare to a patient.

Minn. Stat. § 144.291, subd. 2(c) (emphasis added). Although Minn. Stat. § 144.291, subd. 2(c) does not provide specific examples of what a "health record" is, other sections of the MHRA do. These include "copies of the patient's health record, including but not limited to laboratory reports, x-rays, prescriptions, and other technical information used in assessing the patient's health conditions," Minn. Stat. § 144.292, subd 5(1), and "the pertinent portion of the record relating to a specific condition, or a summary of the record." Minn. Stat. § 144.293, subd. 3. A "health record" is not limited to one of these forms and can be "any information, whether oral or recorded in any form or medium." Minn. Stat. § 144.291, subd. 2(c). Still the definitions of "health record" all relate to information about a patient's actual health condition or treatment for that condition.

There is scant caselaw analyzing what constitutes a "health record" under the MHRA. But in *Rhoades v. Lourey*, No. A18-1120, 2019 WL 1006804 (Minn. App. Mar. 4, 2019), *review denied* (Minn. May 28, 2019), the Minnesota Court of Appeals concluded that a Bureau of

---

[4] Plaintiff does not describe what "physician's information" he input into the Website that he believes was tracked by the Pixel. (Doc. 1, ¶ 15). He merely alleges that he "used the Website to communicate regarding his specific physician." (*Id.*, ¶ 5).

Criminal Apprehension address verification form that contained a Minnesota Sex Offender Program committed-patient's full name, current address, date of birth, height, weight, eye color, hair color, Minnesota driver's license number, Social Security number, place of employment, employer's address, FBI number, Minnesota prison offender identification number, and BCA number was **not** a health record under the statute. The *Rhoads* court noted that the definition of "health record" does not cover a situation where a "person's status as a patient could be inferred," *Id.* at *2 (declining to read into the statute that a health record exists where someone could deduce that someone is a patient of a facility), and that a plaintiff cannot rely upon inferences about information not contained in a disclosure to find that the document was a health record. *Id.*

Similarly, in *Furlow v. Madonna Summit of Byron*, No. 19-987, 2020 WL 413356, at *2 (Minn. App. Jan. 27, 2020), the court held that a nurse's aide who posted a photo with an unflattering caption of a wheelchair-bound resident to social media did not violate the MHRA because the photo was not a health record. *See id.* at *1. The court clarified that "[w]hile a viewer of the post may infer that [the patient] was receiving care in a nursing home, there is nothing explicitly in the photograph or caption that goes to the nature of the care or condition." *Id.* at *3. Several other decisions follow the same logic. *See, e.g.*, *Lehman*, 2005 WL 894756 at *6 (concluding under the 2002 version of the MHRA that a letter that did not contain "any information regarding diagnosis, treatment, medication, or otherwise relevant to assessing Lehman's health condition" was not a health record under the Act); *Howard v. Des Moines Register & Tribune Co.*, 283 N.W.2d 289, 300 (Iowa 1979) (records of sterilization

maintained by governor's office are not "medical records" because they are not compiled for diagnostic or treatment purposes).

In cases where Minnesota courts have found disclosure of a health record under the MHRA, there is specific information about the care and treatment of the patient. *See S.F. v. Clay County*, No. A14-0494, 2014 WL 6863230 at *5 (Minn. App. Dec. 8, 2014) (an abuse/neglect report that disclosed use of marijuana before pregnancy was a health record under the MHRA); *Expose v. Thad Wilderson & Assocs., P.A.*, 889 N.W.2d 279, 282 (Minn. 2016) (statements made during a therapy session constitute a health record).

Recently, in *Holtzbauer v. Allina Health Sys.*, 23 N.W.3d 608, 611 (Minn. App. 2025), *review granted* (Aug. 12, 2025), the Minnesota Court of Appeals considered whether a provider disclosed a "health record" when it released information that an individual was at specific facility and in a specific room. In a split decision, the court focused on the category of "the provision of health care" to conclude that disclosing the room number and emergency room location of the plaintiff constituted a health record. *Id.* The court reasoned that in certain circumstances, such as a mental health institution or a domestic violence survivor, such information would constitute protected health information as one can more than infer that the individual was receiving a specific type of care. *Id.* at 619-20. In the dissent, Judge Matthew Johnson wrote that while information that a person is a patient at a special-purpose medical facility might reveal a health record, that was not the case before them. *Id.* at 625. Judge Johnson noted that the plaintiff in *Holtzbauer* was a patient at a general emergency facility, and thus there was no discussion of the provision of health care so as to fit the definition of a health record under the MHRA. *Id.* at 625-26.

There are three cases in Minnesota that discuss an MHRA claim based on a patient's visit to a medical provider's website: *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 935 (D. Minn. 2024); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 713 (D. Minn. 2023); *Okash v. Essentia Health*, No. CV 23-482 (JRT/LIB), 2025 WL 642913, at *6 (D. Minn. Feb. 27, 2025) ("*Okash II*"). In each case, the court held that the plaintiff sufficiently pled an MHRA claim to survive a motion to dismiss.

In *Mekhail*, Judge Menendez considered whether Mekhail had sufficiently alleged that the information tracked by the Meta pixel constituted a health record under the MHRA to survive a motion to dismiss. 726 F. Supp. 3d at 935. Mekhail alleged that the Pixel deployed protected information to Meta, mainly that she was attempting to **log into the patient portal**. *Id.* The court reasoned that this operation of a Pixel implicated disclosure that revealed **more than an inference** of the plaintiff's patient status. *Id.* And, importantly, the plaintiff alleged that the Pixel was active in the private, patient-portal website where she could schedule appointments, arrange prescription refills, attend remote visits with providers, review medical test results, and communicate with her providers. *Id.* The plaintiff also alleged that the Pixel transmitted information about appointments and insurance status. *Id.* at 936. Ultimately, the court concluded that the allegations were sufficient to plead a claim under the MHRA. *Id.*; *accord In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 713 (D. Minn. 2023) (permitting an MHRA claim to survive a motion to dismiss where the plaintiff alleged the Pixel tracked the patients' scheduling appointments, receiving medical diagnosis, reviewing medical bills, and searching symptoms and medical conditions).

In *Okash II*, 2025 WL 642913, at *6, Judge Tunheim considered a plaintiff's MHRA claim. There, the plaintiff alleged that he researched specific providers, their credentials, areas of specialty, and whether they accepted his insurance. *Id.* The plaintiff also alleged that he researched his specific medical conditions including sleep apnea, bladder cancer, and diabetes. *Id.* And he alleged that Meta could learn the doctors he was seeking care from, which conditions needed care, and what type of insurance he had. *Id.* The court concluded that the precision of that information—i.e. specific doctors, insurance status, and medical conditions—allowed the MHRA claim to survive the motion to dismiss. *Id.*

To summarize, for information to meet the definition of a health record under the MHRA, there must be more than an inference of the provision of healthcare. *See, e.g., Mekhail*, 726 F. Supp. 3d at 935; *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 713; *Furlow*, 2020 WL 413356, at *2; *Rhoades*, 2019 WL 1006804; *Holtzbauer*, 23 N.W.3d 608.

**b. Plaintiff's Allegations**

Plaintiff alleges that he visited the Sanford Health Doctors page[5] on an unknown date and input his "**physician's information**." (Doc. 1, ¶ 15) (emphasis added). Plaintiff alleges that after he put his physician's information into the search bar, he later received at an unknown time "targeted advertisements relating to back and spine issues," although he cannot recall any specifics about the advertisements. (*Id.*) Plaintiff does not discuss his prior non-Sanford related browsing history and whether it caused the unidentified advertisements.

---

[5] Sanford Health, *Find a Doctor*, https://www.sanfordhealth.org/doctors (last visited September 12, 2025 7:41 a.m.).

The *Find a Doctor* page that Plaintiff used allows anyone on the internet to search for information about doctors. A website visitor can input the information in a search bar, or filter name by the alphabet as shown here:




For exemplary purposes for this motion, any Website visitor can input the name "John" and a number of providers who meet the search result will appear:




From here, any Website visitor can filter by type of care, city, language and other details. The visitor can then click on various providers and view their background, specialties, reviews, and location.[6] There is no requirement to log-in or provide any identifying information to search for a particular physician.

Plaintiff suggests that a generic search of a physician on a health provider website constitutes a health record under the MHRA. Again, that is not what the MHRA provides. Not every contact with a health care facility creates a health record under the MHRA—for information to constitute a health record it must "relate to" the person's physical or mental health condition, the "provision of healthcare" or the payment for a provision of healthcare. Minn. Stat. § 144.291, subd. 2(c). Plaintiff's Website visit where he entered his "physician's

[6] *See, e.g.*, Sanford Health, *Jonathan Aligada*, https://www.sanfordhealth.org/doctors/jonathan-aligada (last visited September 12, 2025 7:50 a.m.)

information"—not his own information—did not relate to the provision of healthcare. Unlike *Mekhail*, Plaintiff does not allege that the Pixel tracked Plaintiff's ability to log into the patient portal, that he attempted to log into the portal, or that the Pixel tracked information within the patient portal relating to care provided to him. 726 F. Supp. 3d at 935. And unlike *Okash II*, Plaintiff does not allege that he researched specific medical conditions or his insurance coverage for a specific physician. 2025 WL 642913, at *6.

Plaintiff's allegations are also distinguishable from state court decisions—he does not allege that the Website tracked any form of his patient status or the details about his healthcare. At most, Plaintiff alleges that Meta could infer he was a patient because he visited the Website and entered a physician name. But that is insufficient to constitute a health record under Minnesota law. *See, e.g., Mekhail*, 726 F. Supp. 3d at 935; *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d at 713; *Furlow*, No. 19-987, 2020 WL 413356, at *2; *Rhoades*, No. A18-1120, 2019 WL 1006804; *Holtzbauer*, 23 N.W.3d 608. Every time a court has concluded that information constitutes a health record, there was some semblance of the provision of health care—i.e. scheduling appointments, researching specific conditions, identifying patient room numbers. *See supra* III.B. Inputting a physician's name on a public website, in and of itself, is not a health record under the MHRA. There are dozens of reasons why a user would visit www.sanfordhealth.org and input a provider's name: researching providers for another individual, reviewing competitor ratings and reviews, gathering internal content for review by hospital staff, finding an old friend, or even proud family members reviewing their relative's physician profile. Plaintiff has not stated a plausible claim for relief under the MHRA, and Sanford respectfully requests the Court dismiss Count IV with prejudice.

## III. Plaintiff failed to state an ECPA claim where Sanford was a party to Plaintiff's communications, and the crime-tort exception does not apply.

Plaintiff alleges that Sanford unlawfully intercepted, disclosed, and used his communications in violation of the ECPA. 18 U.S.C. § 2510 *et seq*. Because Sanford was a party to Plaintiff's alleged communications and therefore did not unlawfully intercept those communications, Plaintiff cannot state a claim under the ECPA. Further, Plaintiff fails to allege any facts that would support an application of the crime-tort exception.

The ECPA (also known as the Wiretap Act) provides that "any person who—(a) intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral or electronic communication" may be subject to a civil penalty. 18 U.S.C. § 2511(1)(a), (5)(a)(ii). The same is true for any person who intentionally discloses or uses, or endeavors to disclose or use, the contents of an intercepted communication. 18 U.S.C. § 2511(1)(c), (d).

To state a claim under the ECPA, Plaintiff must allege that Sanford engaged in an interception. *See* 18 U.S.C. § 2511(1). An "interception" is the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4). However, Section 2511(2)(d) provides a "party exception" when the person intercepting a communication "is a party to the communication or where one of the parties to the communication has given prior consent to such interception," because a "party to a communication" cannot unlawfully intercept that same communication. *See* 18 U.S.C. § 2511(2)(d); *Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-1497, 2009 WL 1664468, at *3-4 (D. Minn. June 11, 2009); *Mekhail*, 2024 WL 1332260, at *4. In other words, where the alleged interceptor is the "intended recipient of a communication

[it] is necessarily one of its parties" and cannot be held liable under the ECPA. *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 142-43, 153 (3d Cir. 2015); *see also Okash I*, 2024 WL 1285779, at *3 (applying the party exception because the defendant was the intended recipient even if the "intended recipient . . . duplicates and forwards the communication to a third party"); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *7 (holding that the intended recipient is a party to the communications).

Plaintiff admits that Sanford was a party to the "communications" that he claims were intercepted. (*See* Doc. 1, ¶ 175 (citing "the transmissions from Plaintiff . . . **to Defendant**, through Defendants Website . . .")) (emphasis added). Thus, Sanford was not "wiretapping" under Section 2511(1). For example, in *Okash I*, 2024 WL 1285779, at *3-4, Judge Tunheim concluded that Essentia Health did not unlawfully intercept the plaintiff's communications because the visit to the Website necessarily made Essentia a party to the communication. The court also rejected an argument that the plaintiff did not authorize Essentia to track the communication, stating that: "[e]ven accepting Okash's allegation that HIPAA regulations required his authorization, lack of authorization does not change the fact that Essentia, a party to the communication, consented to its interception." *Id.* at *4. Accordingly, the court concluded that the party exception applied. *Id.*; *see also Okash II*, 2025 WL 642913 at *3-4 (concluding the ECPA claim still failed upon filing of amended complaint); *accord Kurowski v. Rush Sys. for Health*, 2023 WL 2349606, at *3-4 (N.D. Ill. Mar. 3, 2023). The ECPA explicitly excludes liability under these circumstances. *See* 18 U.S.C. § 2511(2)(d).

The "party exception" does not apply, however, if the "communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or

laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). The crime-tort carveout is narrow and requires that the recording party intercept the plaintiff's communications "for the purpose of committing a tortious or criminal act," *id.*, meaning the Court must look to Plaintiff's allegations about Sanford's "intended use of the recordings" to determine the purpose of the recording. *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 719 (D. Minn. 2023); *Okash II*, 2025 WL 642913, at *3 (citing *United States v. Jiau*, 734 F.3d 147, 152 (2d Cir. 2013)); *In re DoubleClick, Inc. Privacy Litig.*, 154 F. Supp. 2d 497, 515 (S.D.N.Y. 2001).

Plaintiff does not allege facts needed to implicate the crime-tort exception. To successfully invoke the crime-tort carveout, Plaintiff must "plead sufficient facts," showing that (1) Sanford intended to commit a tortious or criminal act; (2) the tortious or criminal act was "independent of the intentional act of recording"; and (3) Sanford intended to commit that independent tortious or criminal act "at the time of the recording." *Caro v. Weintraub*, 618 F.3d 94, 99-100 (2d Cir. 2010). Plaintiff did not and cannot allege any of these elements.

First, Plaintiff does not allege that Sanford acted for the purpose of criminally violating the MHRA (or HIPAA) or tortiously invading his privacy—i.e. that Sanford had the intent to act criminally or tortiously. (*See generally* Doc. 1). To determine whether Sanford had a "tortious or criminal" purpose in using the Pixel and "intercepting" Plaintiff's website communications, the Court must look to Plaintiff's allegations about Sanford's "intended use of the recordings." *United States v. Jiau*, 743 F.3d 147, 152 (2d Cir. 2013). Plaintiff alleges that Sanford's tracking is used for advertising and marketing purposes. (Doc. 1, ¶ 5 ("Sanford used Pixel to intercept its users' communications . . . for purposes of future ad targeting and marketing.")). But advertising is not a crime nor a tort. Courts across the country have found that the crime-tort

exception to the Wiretap Act is inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously. *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022); *In re Google Inc. Gmail Litig.*, No. 13-md-02430-LHK, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014); *Okash I*, 2024 WL 1285779, at *4.

For example, in *DoubleClick*, the court held that the carveout did not apply to internet "tracking" activity because "everything in [the Complaint] suggest[ed] that DoubleClick ha[d] consciously and purposefully" adopted that tracking technology as part of "a highly-publicized market-financed business model in pursuit of commercial gain." 154 F. Supp. 2d at 518-19. And the court squarely held that "commercial gain" was a non-tortious and "permissible" goal under the Wiretapping Act. *Id.* at 518. In Minnesota, *Okash I* followed this reasoning in holding that an ECPA claim could not proceed where the independent tort was marketing to increase profits. 2024 WL 1285779, at *4.

But in *Mekhail*, Judge Menendez allowed an ECPA claim to proceed past a motion to dismiss because the plaintiff alleged that private and protected health data—in that case, the private patient portal—was intercepted for the purpose of monetization. 726 F. Supp. 3d 916, 928. She rejected the proposition established by courts in California (followed by *Okash I*) that advertising did not fit the crime-tort exception. *Id.* at n. 4. *Mekhail*, however, is an outlier. Nearly every court has applied the reasoning outlined *Okash I* to conclude that an ECPA claim fails where the tort is to generate revenue without ill intent.[7] The difference in *Mekhail* is that

[7] *See, e.g., Katz-Lacabe v. Oracle Am., Inc.*, 2024 WL 1471299, at *2-3 (N.D. Cal. Apr. 3, 2024) ("collecting and selling data about internet users . . . to generate revenue" not a "criminal or tortious" purpose, even if defendant also made "misrepresentations" about the "extent of its" data collection); *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120 (S.D. Cal. 2023)*; In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d at 797 ("the crime-tort exception to the Wiretap Act is

the plaintiff alleged the monetization of private health data that was tracked from the **private patient portal** which required a log in and tracked items such as scheduling appointments and refilling prescriptions. There are no such allegations here nor any allegation that Plaintiff attempted to use the Sanford patient portal. There are no factual allegations in the Complaint that Sanford, a nonprofit faith-based healthcare system, installed the Pixel and software-tracking technology with the "primary motivation" of knowingly committing a criminal violation of HIPAA or MHRA, or perpetrating a tort. The Court should follow *Okash I* to conclude that Plaintiff did not allege a criminal or tortious purpose in the interception of data.

Moreover, the crime-tort exception does not apply because the underlying criminal or tortious acts must be distinct from the alleged wiretapping. Plaintiff did not allege an independent criminal or tortious act distinct from the alleged interception. He alleges that Sanford violated the MHRA and invaded his privacy, but the allegations encompass only the simultaneous interception and disclosure of information to Meta. (Doc. 1, ¶¶ 3-6, 165, 209). "A simultaneous tort arising from the act of recording itself is insufficient" and cannot show the "necessary" "tortious intent." *Caro*, 618 F.3d at 100; *see also Kurowski v. Rush Sys. for Health (Kurowski II)*, No. 22-5380, 2023 WL 4707184, at *4 (N.D. Ill. July 24, 2023). The independence requirement is important; without it, the crime-tort carveout would be "circular" and easy to circumvent. *Planned Parenthood Fed. of Am., Inc. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022);

---

inapplicable where the defendant's primary motivation was to make money, not to injure plaintiffs tortiously"); *Rodriguez v. Google, LLC,* 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021) (similar); *Allen v. Quicken Loans, Inc.,* 2018 WL 5874088, at *6 (D.N.J. Nov. 9, 2018) (similar); *Cohen v. Casper Sleep, In*c., 2018 WL 33928277, at *4 (S.D.N.Y. July 12, 2018) (similar); *In re Google Inc. Gmail Litig*., WL 1102660, at *18 n.13 (similar).

*see United States v. Phillips*, 540 F.2d 319, 327 n.5 (8th Cir. 1976). None of the allegations in Plaintiff's complaint meet this requirement.

Because Plaintiff failed to allege that Sanford committed an independent tortious or criminal act for the purpose of committing such act at the time of the interception, the party exception applies, and Plaintiff failed to state a claim under the ECPA. Sanford respectfully requests that the Court dismiss Count II of Plaintiff's Complaint.

## IV. Plaintiff failed to state a MUDTPA claim with particularity as required under Rule 9(b).

Plaintiff asserts an MUDTPA claim under Minn. Stat. § 325D.44, subd. 1(5) & (7). (Doc. 1, ¶ 191). Section 325D.44, subdivisions 1(5) and (7), bar certain misrepresentations regarding the nature of goods and services offered during business. MUDTPA provides that "[a] person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it." Minn. Stat. § 325D.45, subd. 1. Plaintiff has not stated a claim because he (1) failed to meet the particularity requirements under Rule 9, (2) failed to allege future harm, and (3) failed to allege a causal nexus.

### a. Plaintiff failed to meet the particularity standard required under Rule 9

Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. Rule. Civ. P. 9(b). Rule 9(b)'s heightened pleading standard applies to MUDTPA claims. *E-Shops Corp. v. U.S. Bank Nat'l Ass'n*, 678 F.3d 659, 665 (8th Cir. 2012). To state a claim under MUDPTA, the complaint must set forth "the who, what, when, where, and how" of the alleged violation of the act. *Id.* at 666. The main purpose of Rule 9(b) is to create notice. *Commercial Prop. Invs., Inc. v. Quality Inns Int'l, Inc.*, 61 F.3d 639, 644 (8th Cir. 1995) (describing the purpose as to "facilitate a

defendant's ability to respond and to prepare a defense to charges of fraud"). Therefore, the level of particularity required varies along with the facts of each case. *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007).

Plaintiff did not allege the what, when, and how of the alleged MUDPTA violation. Plaintiff alleges that in the "fall of 2024" he was "due to receive back surgery," and that "[i]n advance of his surgery" he interacted with the Website. (Doc. 1, ¶ 15). But Plaintiff fails to allege *when* he visited the Website and *when* he received the alleged targeted advertising. He claims that he inputted "his physician's information," but never says what he actually entered. (*Id.*) And Plaintiff does not plead with particularity the causal nexus and harm from these alleged deceptive practices. He claims that he received "targeted advertisements" but cannot "recall a specific advertisement." (*Id.*, ¶ 16). In short, Plaintiff alleges that he looked up his physician on the Website at some unknown time, then at some mysterious point after he visited the Website, he saw advertisements he cannot recall that related to back and spine issues. Notably, Plaintiff does not allege that these were Sanford advertisements. (*Id.*) These vague allegations fall far short of the particularity required by Rule 9 and Count III should be dismissed.

**b. Plaintiff lacks standing because he failed to allege future harm**

Plaintiff also lacks standing to bring a MUDTPA claim, which creates a remedy for "[a] person likely to be damaged by a deceptive trade practice." Minn. Stat. § 325D.45, subd. 1. To state a claim under the MUDTPA, a "plaintiff must allege a likelihood of future harm." *Jaskulske v. State Farm Mut Auto. Ins. Co.*, No. 14-cv-869, 2014 WL 5530758, at *6 (D. Minn. Nov. 3, 2014) (citation omitted). Whether a plaintiff has shown a likelihood of future harm

under the MUDTPA converges with the threat-of-future-harm inquiry under Article III. *Barclay*, 2022 WL 486999, at *2.

The only remedy available under the MUDTPA is injunctive relief for future harm. *See* Minn. Stat. § 325D.45; *see also Barclay v. Icon Health & Fitness, Inc.*, No. 19-cv-2970, 2022 WL 486999, at *1 (D. Minn. Feb. 17, 2022). Thus, to have standing for this claim, Plaintiff must allege that an injunction would redress an imminent injury for him. *Park v. U.S. Forest Serv.*, 205 F.3d 1034, 1037 (8th Cir. 2000). Even if a plaintiff has standing for past harms, the plaintiff may not have standing for injunctive relief. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021); *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983).

Plaintiff has not alleged any future harm. (*See* Doc. 1, ¶¶ 189-201). Aside from one conclusory allegation that he has "suffered and will continue to suffer injury," (*Id.*, ¶ 202), Plaintiff's allegations concern past harms that an injunction cannot remediate. Regardless, Plaintiff cannot allege that he is likely to suffer future harm because he is on notice of the allegedly deceptive practice and thus can no longer be deceived or harmed by continued violations. *See Jaskulske*, 2014 WL 5530758, at *6 ("Having experienced, investigated, and alleged the settlement practice, Jaskulske is on notice of the practice and can no longer say that he will again be deceived by the practice."); *see also Olen v. N. Tier Retail, LLC*, No. 11-2665, 2012 WL 1580994, at *6 (D. Minn. May 4, 2012) (explaining that plaintiff who "personally experienced" allegedly deceptive practice was "clearly aware of the practice and is unlikely to be confused in the future"). And Plaintiff's risk of future harm is speculative, not imminent, because he does not allege that he must imminently use the Website. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 564 & n.2 (1992). An injunction would not redress Plaintiff's alleged harm

because third parties allegedly already have the data. Accordingly, Plaintiff does not possess the required standing for this claim. *See Barclay*, 2022 WL 486999, at *2.

**c. Plaintiff failed to allege a causal nexus**

Plaintiffs must allege "a causal nexus between the conduct alleged to violate [Minnesota consumer protection laws] and the damages claimed." *Grp. Health Plan, Inc. v. Philip Morris Inc.*, 621 N.W.2d 2, 4 (Minn. 2001). Even if a plaintiff alleges that some market participants relied on a defendant's statements, that alone is insufficient to show a causal nexus. *Luckey v. Alside, Inc.*, 245 F. Supp. 3d 1080, 1098 (D. Minn. 2017).

Plaintiff did not specifically allege a "causal nexus" between an alleged misrepresentation and any claimed damage. *See Luckey*, 245 F. Supp. 3d at 1098 (dismissing MUTPA claim where the complaint contained only the conclusory statement that "purchasers' relied on Alside's offending statements" and "no factual allegations about who heard or saw and relied on" supporting this conclusory statement). Plaintiff details various Tracking Tools and how they operate. But he did not allege the claimed nexus between Sanford's alleged deceptive trade practices and his alleged damaged: unidentified advertisements relating to back issues. Plaintiff cannot meet the causal nexus requirement linking those ads to Sanford because they could have come from Plaintiff's browsing or transactions at any number of websites. Plaintiff fails to allege that the unknown ads did not or could not have come from another source related to his non-Sanford related internet use. Plaintiff does not identify the alleged private information that he input into the Website and does not provide sufficient detail to establish a causal nexus with the ads he cannot even describe, much less attribute to Sanford. (*See* Doc. 1, ¶¶ 189-203). Plaintiff cannot sustain a MUDTPA claim.

**d. Plaintiff failed to allege deceptive statements**

Sanford's Website cannot be deceptive because it provided notice of the use of the technology on which the Complaint is based. *Song v. Champion Petfoods USA, Inc.*, No. 18-CV-3205, 2020 WL 7624861, at *3 (D. Minn. Dec. 22, 2020) (citation omitted), *aff'd*, 27 F.4th 1339 (8th Cir. 2022); *but see Mekhail*, 2024 WL 1332260, at *8. Sanford's Privacy Statement, as referenced in the Complaint, specifically notified Website users that it collected information via cookies and other tracking means.[8] For example, the Privacy Statement included a notification that:

> Sanford Health, or any third-party advertising partners we choose to work with, may employ various tracking technologies such as cookies, web beacons and analytics software . . . When you visit our website we send one or more "cookies" to your computer or other internet browsing device. Cookies are alphanumeric identifiers stored on your computer through your web browser and are used by most websites to help personalize your browsing experience. Cookies may facilitate additional website features for enhanced performance of your web experience such as remembering preferences, allowing social interactions, analyzing usage for website optimization, providing custom content, allowing third parties to provide social sharing tools, and delivering images or videos from third party websites."

(Doc. 1, ¶ 34). The Privacy Statement also informs Website visitors that it will track a user's IP address by stating: "IP addresses are used to make the connection between your device and the websites and services you use. You can't prevent a website or app from getting the IP address of your device." *See* Privacy Statement. The Privacy Statement also states that its private portal—My Sanford Chart—is considered Protected Health Information and governed under a separate policy. *Id.* Still, the Privacy Statement described parameters when

[8] *See* Sanford Health, *Privacy Statement*, https://www.sanfordhealth.org/privacy-statement (last visited on September 16, 2025 at 9:56 a.m.) ("Privacy Statement").

PHI and PII information is deleted and stored. *Id.* Plaintiff's conclusory allegation that the Privacy Statement misrepresented Sanford's use of tracking tools lacks merit. *See Zean v. Fairview Health Servs., Inc.*, 858 F.3d 520, 526-27 (8th Cir. 2017) (courts do not have to accept allegations contradicted by documents of which the court can take judicial notice). Plaintiff has failed to state a claim under the MUDTPA and Sanford respectfully requests that the Court dismiss Count III with prejudice.

## V. Plaintiff has failed to state a claim for relief under MCFA because he failed to establish a causal nexus.

Plaintiff also alleges that Sanford violated the MCFA. The MCFA prohibits "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice with the intent that others rely thereon in connection with the sale of any merchandise." *Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 850 N.W.2d 682, 694 (Minn. 2014). The statute "does not apply to all allegations of fraud, but only to those where there is a nexus between the alleged fraud and the sale of merchandise," which includes "services." *Mekhail*, 726 F. Supp. 3d at 928-29; *see also Grady v. Progressive Direct Ins. Co.*, 643 F. Supp. 3d 929, 935 (D. Minn. 2022); Minn. Stat. § 325F.68, Subd. 2; *accord Banbury v. Omnitrition Int'l, Inc.*, 533 N.W.2d 876, 882 (Minn. App. 1995).

To proceed on a MCFA claim, a Plaintiff "must plead and prove a causal relationship between the alleged injury and the wrongful conduct that violates the statute." *Graphic Commc'ns*, 850 N.W.2d at 693. In *Mekhail*, the defendant healthcare provider sought dismissal of an MCFA claim that alleged that the provider had misrepresented its privacy policies considering its use of behavioral tracking technology that shared certain health data with Meta. 726 F. Supp. 3d at 923. The defendant argued "a lack of connection between the

misrepresentations alleged . . . and the sale of any merchandise" within the meaning of the statute. *Id.* at 929. The court agreed, reasoning that although the statutory definition of "merchandise" covered "services" (and the court assumed "services" included "medical services"), there was no allegation "that there was a misrepresentation made by [the defendant] in connection with its provision of any medical services." *Id.* Rather, the *Mekhail* court found, the plaintiff had "allege[d] a misrepresentation related to data privacy, but [the defendant] [was] not in the business of providing data privacy services," so the allegation did not satisfy the causal nexus requirement. *Id.* But in *Okash II*, the court rejected the reasoning in *Mekhail* when it held that the healthcare provider was "in the business of marketing medical services." *Okash II*, 2025 WL 642913 at *5.

The discrepancy between *Mekhail* and *Okash II* on whether a healthcare provider is in the business of data privacy or marketing healthcare does not matter for Sanford's motion to dismiss Plaintiff's MCFA claim. Here, Plaintiff fails to allege any connection between the use of the Pixel and the sale of medical services. As discussed above, Plaintiff does not describe what information he input on the Website that was tracked, and he does not identify what advertisements he later received. In fact, Plaintiff alleges only that the advertisements "relat[ed] to back and spine issues." (Doc. 1, ¶ 16). Plaintiff does not allege that he was targeted with advertisements selling Sanford services. Even if the Court follows the *Okash II* reasoning that Sanford is engaged in marketing medical services, Plaintiff does not allege that the alleged misrepresentation—the use of a Pixel that tracked his physician's information—is connected to Sanford's marketing of medical services.

Plaintiff has failed to allege the required "nexus between the alleged fraud" and the "services" Sanford sold to him. *Mekhail*, 726 F. Supp. 3d at 928–29. Sanford respectfully requests that the Court dismiss Count V of Plaintiff's Complaint.

## VI. The Court should strike Plaintiff's fail-safe class definition.

"Courts may strike 'from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *BJC Health Sys. v. Columbia Cas. Co.*, 478 F.3d 908, 917 (8th Cir. 2007) (quoting Fed. R. Civ. P. 12(f)). "Judges enjoy liberal discretion to strike pleadings under Rule 12(f)." *Id.* (citing *Nationwide Ins. Co. v. Cent. Mo. Elec. Coop., Inc.*, 278 F.3d 742, 748 (8th Cir. 2001). While striking a pleading is "extreme" and "disfavored" courts find that "it is sometimes appropriate to strike pleadings, such as when a portion of the complaint lacks a legal basis." *Donelson v. Ameriprise Fin. Services, Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021).

The Eighth Circuit has held that "a district court may grant a motion to strike class-action allegations prior to the filing of a motion for class-action certification." *Donelson v. Ameriprise Fin. Services, Inc.*, 999 F.3d 1080, 1092 (8th Cir. 2021). The Eighth Circuit has further instructed that "[i]t is sensible to permit class allegations to be stricken at the pleading stage if it is apparent from the pleadings that the class cannot be certified . . . ." *Id.* (cleaned up).

A "fail-safe class" is a class that "is defined to preclude membership unless a putative member would prevail on the merits." *Orduno v. Pietrzak*, 932 F.3d 710, 716 (8th Cir. 2019). Fail-safe classes are often used as an attempt to avoid Rule 23's predominance inquiry but are prohibited because they "would allow putative class members to seek a remedy but not be bound by an adverse judgment—either those class members win or, by virtue of losing, they are not in the class and are not bound." *Id.* (internal quotations omitted). Fail-safe classes are

also prohibited because they are unmanageable in violation of Rule 23(b)(3)(D) "because the court cannot know to whom notice should be sent." *Id.* at 717 (citing *Kamar v. RadioShack Corp.*, 375 F. App'x 734, 736 (9th Cir. 2010)).

Plaintiff defines two purported classes in his Complaint – a Nationwide Class and a Minnesota Class. Plaintiff defines his purported Nationwide Class as "[a]ll persons whose Sensitive Information was disclosed to a third-party through Defendant's Website without authorization or consent during the Class Period." (Doc. 1, ¶ 133). Plaintiff defines his purported Minnesota Class as "[a]ll residents of Minnesota whose Sensitive Information was disclosed to a third-party through Defendant's Website without authorization or consent during the Class Period." (*Id.*, ¶ 134).

The Eighth Circuit and courts within it have found similar class definitions to be "fail-safe." *See Orduno*, 932 F.3d at 715-17 (class defined to include all individuals whose driver's license records were obtained without a purpose permitted under Driver's Privacy Protection Act by defendant while employed by the defendant city was fail-safe and violated Rule 23's predominance and manageability requirements); *Thompson v. Vintage Stock, Inc.*, 4:23-CV-00042-SRC, 2024 WL 492052, at *10 (E.D. Mo. Feb. 8, 2024), *reconsidered on other grounds*, 4:23-CV-00042-SRC, 2024 WL 1636705 (E.D. Mo. Apr. 16, 2024) (striking class definitions that included whether the purported class members consented to certain communications or whether those communications contained material encouraging the purchase of the defendant's goods because they were fail-safe); *see also Ford v. TD Ameritrade Holding Corp.*, 995 F.3d 616, 624 (8th Cir. 2021) (reversing class certification because class definition included two contested elements of liability).

Plaintiff's proposed class definitions contain at least three contested elements of liability. First, like in *Thompson*, a lack of consent or authorization is included within both class definitions. This alone makes the definitions fail-safe. *See Thompson*, 2024 WL 492052 at *10. Second, the class definitions assume that the class members' Sensitive Information, however defined,[9] was obtained through the Website. If a purported class member's information was obtained but that information was not "Sensitive Information" they would be automatically excluded from the class and not bound by any judgment. Third, the purported class members' obtained "Sensitive Information" would have to then be transmitted to a third party or they would be excluded from the class. Plaintiff's class definitions would permit purported class members to seek a remedy but not be bound by an adverse judgment. Accordingly, they are fail-safe definitions and should be struck under Rule 12(f).

**CONCLUSION**

Plaintiff has failed to assert viable claims for Counts I through V of his complaint. He has also asserted fail-safe class definitions that should be stricken.

[9] Plaintiff included "Sensitive Information" within the class definitions. That phrase is not defined in Plaintiff's Complaint, but "Personal Information" is defined. It is not clear what information is meant to be included within the class definitions. Regardless, whether the referenced information is protectable is an additional contested element of liability.

Dated: 9/22/2025

**Larson · King LLP**

By *s/ Shawn M. Raiter*
Shawn M. Raiter (0240424)
Zane P. Aubert (0402523)
Alex Baker Kroeger (0400604)
2800 Wells Fargo Place
30 East Seventh Street
St. Paul, MN 55101
(651) 312-6500
sraiter@larsonking.com
zaubert@larsonking.com
akroeger@larsonking.com

**Attorneys for Defendant Sanford Health**